UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:04CV-144-R

SANDRA ANN WINTERS                                     PLAINTIFF

v.

CRITTENDEN COUNTY BOARD OF EDUCATION           DEFENDANT

## MEMORANDUM OPINION

Defendant Crittenden County Board of Education ("Board"), has moved for summary judgment (Dkt. # 23). Plaintiff Sandra Ann Winters ("Winters") responded (Dkt. # 30), the Board replied (Dkt. # 32), and this matter is now ripe for decision. For the reasons given below, Defendant's motion for summary judgment is **GRANTED**.

## BACKGROUND

Ms. Winters worked as a custodian at Crittenden County Elementary School from 1998 until April 24, 2003, when she was terminated. On July 8, 2002, the day Ms. Winters was scheduled to report to work for the beginning of the year, she made the following request, in writing, to the school's principal, Melissa Tabor: "I'm requesting to be off from work, due to an illness that I have, until July 26. I will return July 29. I'm also requesting to keep my sick days for further use later in the school year for a medical emergency." (Exhibit 1 to Plaintiff's Deposition, filed under Dkt. # 24.) Two days later, Ms. Winters filled out a form entitled "Request for Family and Medical Leave of Absence" on which she indicated that the "Family and Medical Leave" was requested for "[her] personal serious health condition." (Exhibit 2 to Plaintiff's Deposition.) The form further indicates that Fredericka Hargis, then the district's

1

superintendent, granted the request on July 24, 2002. During the course of the following school year, Ms. Winters received verbal and written warnings for allowing family members to help her perform her job, as well as a written warning concerning an incident of insubordination.

On April 15, 2003, Ms. Tabor produced an annual evaluation of Ms. Winters that recommended that she not be re-hired for the next school year. On April 21, 2003, Ms. Tabor discussed the recommendation with Ms. Winters. The next day, April 22, Ms. Winters gave Ms. Tabor a letter, signed by her nurse practitioner, stating that she had been diagnosed with fibromyalgia and that, due to this condition, Ms. Winters should not work more than 185 days per year. Ms. Tabor forwarded the letter to Ms. Hargis, and Ms. Hargis directed her to set up a meeting to discuss, with Ms. Winters, whether she could be transferred to a position which would accommodate this requirement; the meeting was apparently scheduled for April 25. The next day, April 23, Ms. Winters discussed with Rita Watson, one of the school's teachers, the possibility of attempting to gather teacher support to save her job. The next day, Ms. Winters was called into Ms. Tabor's office to discuss the conversation with Ms. Watson, and, according to Ms. Tabor, Ms. Winters began speaking loudly and approached Ms. Tabor's desk. Ms. Winters does not recall whether she raised her voice during this meeting or not, but acknowledges that she was upset. She left Ms. Tabor's office, but returned a few minutes later, and Karen Nasseri, the assistant principal, witnessed further heated discussion between the two, on which Ms. Nasseri took notes.

Ms. Tabor reported this incident to Ms. Hargis, who discharged Ms. Winters the next day, April 25, 2003 for insubordination. That day, Ms. Hargis also drafted a letter to Ms. Winters, officially notifying her of her termination. (Exhibit 9 to the Deposition of Ms. Winters,

Dkt. # 24). The letter read, in part: "The cause for this termination is as follows: 1. Insubordination to your principal/supervisor 2. Unprofessional conduct that disrupts the educational process. Your actions on the afternoon of Thursday, April 24, 2003 in the office and lobby of Crittenden County Elementary School during school hours have left me no option other than termination." *Id.*

Ms. Winters filed the complaint in this case as a result of her termination on April 25, 2003. In her complaint, she alleges that her termination was in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* and of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Defendant filed a motion seeking summary judgment on both claims. It alleges that Ms. Winters cannot make out a *prima facie* case for her ADA claim and that she failed to exhaust her administrative remedies, as required, for her claim under the ADEA.

### STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the

party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

**Plaintiff's ADA claims**

The Americans with Disabilities Act (ADA) provides, in relevant part, that "[n]o [employer] shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). A prima facie case of disability discrimination requires the plaintiff to prove that: "(1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable

accommodations; and (3) he was discharged solely by reason of his handicap." *Williams v. London Utility Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004) (citing *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir.2002)). With regard to claims under the ADA, the Supreme Court has held:

> An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability" - that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case-at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier [Social Security] total disability claim. Rather, she must proffer a sufficient explanation.

*Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1997). At her deposition, Ms. Winters testified that she since she was terminated from her position with Crittenden County, she had not worked, nor had she looked for work, because she is not able to do any kind of work. (Deposition of Sandra Winter, Dkt. # 24, Attachment # 2, deposition page 144). Therefore, Defendant argues, she has failed to make out the second prong of the *prima facie* case; that is, she has admitted that she is not "qualified" for the job, either with or without accommodation.

Plaintiff, in her response, argues that "[e]ven though Winters admitted in her deposition on May 2, 2005, that she has been permanently and totally disabled and unable to work at any gainful employment since the date she was discharged, that does not necessarily mean that according to the requirements of the ADA, Ms. Winters cannot perform her job if in fact reasonable accommodations were [*sic*] provided." (Plaintiff's Response to Motion for Summary Judgment, Dkt. # 30, at 6). The Court cannot see the logic in this argument. If Plaintiff is totally

5

disabled, then by definition no accommodation could allow her to work. If she were capable of working with reasonable accommodations, then she would not be, as she stated in her deposition and as she concedes in her responsive pleading, totally disabled. Therefore, there is no dispute about whether or not Ms. Winters can make out her *prima facie* case for a violation of the ADA; on the basis of her deposition testimony and judicial admissions, she cannot.

The Court also notes, although it is not necessary to its disposition of the case, that the evidence that might support the third prong of Ms. Winters' *prima facie* claim is extremely weak. Plaintiff states that she "can put forth evidence showing that the Defendant's reasons for terminating her (i.e., insubordination) are bogus, and that its explanation [*sic*] for firing her do not meet a logical explanation of why she was initially confronted about asking a fellow employee to sign a petition are questionable, at best." (*Id.* at 9). Plaintiff also argues that her good work history up to the time of the termination, in combination with the evidence referenced in the previous sentence "is surely sufficient to cast doubt upon Defendant's sincerity" and raises an issue of material fact which precludes summary judgment. The evidence regarding Ms. Winters's work history, so far as appears in the record, is not without disciplinary issues. Further, it is unclear exactly what evidence Ms. Winters believes demonstrates (1) that the charge of insubordination was "bogus" or (2) that it was illogical that Ms. Tabor sought to discuss with Ms. Winters her conversations with Ms. Watson regarding the petition.

**Plaintiff's ADEA claims**

Defendant argues that Plaintiff's claims allegedly arising under the ADEA must be dismissed because Ms. Winters failed to exhaust her administrative remedies, as required by the statute. "Pursuant to the provisions of the ADEA, an individual must first file a charge of

discrimination with the EEOC as a jurisdictional prerequisite to filing a civil action." *Davis v. Sodexho, Cumberland Coll. Cafeteria* 157 F.3d 460, 463 (6th Cir. 1998) (citing 29 U.S.C. § 623(d) and *Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir.1986), cert denied, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987)).  As in *Davis*, Ms. Winters filed a charge of discrimination with the EEOC; however, she did not allege age discrimination in that charge either by checking the box on the form indicating age discrimination or by mentioning age in her narrative description of the charge.  (Notice of Charge of Discrimination, Exhibit 12 to Dkt. # 24).  Therefore, Plaintiff's ADEA claim must be dismissed.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**.  An appropriate order shall issue.